1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

O

JS-6

LINK: 25

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**NERO AG,**

　　　　　　**Plaintiff,**

　　**v.**

**MPEG LA, L.L.C., and DOES 1**
**through 10, inclusive,**

　　　　　　**Defendants.**

**Case No. 10-cv-3672-MRP-RZ**

**ORDER RE: DEFENDANT MPEG LA, L.L.C.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## I.　　INTRODUCTION

　　Plaintiff Nero AG ("Nero") brings this antitrust lawsuit against Defendant MPEG LA, LLC[1] ("MPEG LA") and Does 1 through 10 for anticompetitive conduct in MPEG LA's licensing of patent pools related to industry standards for consumer electronics. Nero contends MPEG LA has violated Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, by unlawfully maintaining, extending, and/or abusing its monopoly power.  The Court dismissed without prejudice Nero's first complaint for failure to state a claim upon which relief can be granted.  *See Nero AG v. MPEG LA, L.L.C.*, No. 10-cv-3672-MRP-RZ, 2010 WL 4366448 (C.D. Cal. Sep. 14, 2010).  The Court found the complaint lacked the necessary factual allegations to raise its claim above the level of speculation and

---

[1] MPEG is an acronym for the Moving Pictures Experts Group.

-1-

1   hypothesis, but granted Nero an opportunity to amend.[2]  Nero filed a First Amended

2   Complaint ("FAC") on October 4, 2010, which MPEG LA now moves to dismiss on the

3   ground that Nero has failed to remedy the defects in its pleading.  The Court agrees and

4   **DISMISSES** the FAC *with prejudice*.

## II.      LEGAL STANDARD

6          Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a

7   complaint if it fails to state a claim upon which relief can be granted.  In deciding

8   whether the plaintiff has stated a claim upon which relief can be granted, the Court must

9   assume that the plaintiff's allegations are true and must draw all reasonable inferences in

10   the plaintiff's favor.  *See Usher*, 828 F.2d at 561.  However, the Court is not required to

11   accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or

12   unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

13   2008).  Moreover, the Court will not accept legal conclusions cast in the form of factual

14   allegations if those conclusions cannot reasonably be drawn from the facts alleged.

15   *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

16          As the Court explained in detail in its prior Order, "to survive a motion to dismiss,

17   a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

18   relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)

19   (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Nero*

20   *AG*, 2010 WL 4366448, at *5.  "The plausibility standard is not akin to a 'probability

21   requirement,' but it asks for more than a sheer possibility that a defendant has acted

22   unlawfully."  *Iqbal*, 129 S.Ct. at 1949.  "Threadbare recitals of the elements of a cause of

23   action, supported by mere conclusory statements, do not suffice."  *Id*.  "Determining

24   whether a complaint states a plausible claim for relief will . . . be a context-specific task

25

26

---

27   [2] The allegations brought by Nero in its initial complaint are summarized in the Court's

28   September 14, 2010 Order.  *Id*. at *1-3.  The present Order should be read in conjunction
with the prior September 14th Order.  *See id.*

1   that requires the reviewing court to draw on its judicial experience and common sense."

2   *Id*. at 1950.

3                **III.    THE PLEADING REMAINS IMPLAUSIBLE**

4        The FAC relies on three basic allegations: (1) Nero has no practical alternative to

5   licensing from the MPEG-2 pool; (2) MPEG LA has impermissibly expanded the

6   temporal scope of its monopoly by adding non-essential patents with later term expiration

7   dates to the MPEG-2 patent pool; and (3) MPEG LA coerced licensees into an Extended

8   MPEG-2 License, which cannot be cancelled until January 31, 2016.  None of these

9   allegations have the factual foundation to raise them above the speculative level.

10         **1.  Economic Infeasibility of Direct Licensing**

11        Nero's monopolization claim continues to rely heavily on the economic

12   infeasibility of individual licensing, but Nero has not demonstrated any attempt to license

13   the necessary patents individually.  "The burden of proving lack of a realistic opportunity

14   to license directly cannot be met where a plaintiff never makes an inquiry or attempts to

15   negotiate a single individual license."  *Nero AG*, 2010 WL 4366448, at *6 (citing

16   *Matsushita Elec. Indus. Co., Ltd. v. Cinram Int'l, Inc.*, 299 F. Supp. 2d 370, 377-78 (D.

17   Del. 2004)).  As the Court explained in its prior Order, because Nero has not tried to

18   individually license only the patents it needs, its argument that direct licensing is

19   economically infeasible remains a speculative hypothesis.  *See id*.

20        The FAC includes a new allegation that it would cost Nero $7 million to determine

21   which essential patents Nero must license to comply with the MPEG-2 standard.[3]  FAC ¶

22

23

---

24   [3] Nero contends that because MPEG LA charges a patent holder a fee of $8,500 to
evaluate the patent to determine whether it is essential to the MPEG-2 standard and
25   should thus be included in the pool, it would "cost" a licensee $8,500 times 800-plus
26   patents, or over $7 million, to determine which patents in the pool the licensee needed.
FAC ¶ 42.  Nero's estimate is irrelevant and, furthermore, is entirely speculative.  By
27   virtue of Nero's knowledge of its own technology, and its elimination of expired patents,
28   international patents, and those patents it alleges are nonessential, Nero will be able to
focus on those patents relevant to its products.  Nero's absurd $7 million calculation

1    42.  Even if Nero's estimate were accurate, this allegation adds nothing to pleading

2    because the time and effort Nero will have to expend to determine which patents it needs

3    to license to avoid infringement litigation is irrelevant to the feasibility determination.

4    *Nero AG*, 2010 WL 4366448, at *6 (citing *Buffalo Broadcasting Co., Inc. v. Am. Soc'y of*

5    *Composers, Authors & Publishers*, 744 F.2d 917, 926 (2d Cir. 1984); *Columbia*

6    *Broadcasting Sys., Inc. v. Am. Soc'y of Composers, Authors & Publishers*, 620 F.2d 930,

7    936 (2d Cir. 1980); *Cinram Int'l Inc.*, 299 F. Supp. 2d at 378-79); *see also Nero AG*,

8    2010 WL 4366448, at *7 (rejecting Nero's "prohibitively expensive" justification for

9    failing to identify non-essential patents).  Thus, having already rejected Nero's excuse

10   that it would be cost-prohibitive for Nero to determine which patents it needs to license in

11   order to practice its technology without infringing, the Court concludes again that Nero

12   has failed to plausibly allege that direct licensing is infeasible.

13           **2.  Predatory Conduct: Willful Addition of Non-Essential Patents**

14           Nero's allegations of predatory conduct continue to be premised on inference.

15   Nero infers that because of the "drastic and unforeseen increase in the number of patents"

16   in the patent pool, MPEG LA must have added hundreds of non-essential patents to the

17   pool for predatory purposes.  Compl. ¶ 11(b); FAC ¶ 11(b).  The Court found Nero's

18   original allegations were unsupported by any actual investigation into the essentiality of

19   the patents in the pool because, for instance, Nero "fail[ed] to name even one example of

20   one patent that is non-essential and added for the purpose of unlawfully extending the

21   temporal scope of the patent pool."  *Nero AG*, 2010 WL 4366448, at *7.

22           To its discussion of nonessential patents in the MPEG-2 pool, the FAC adds six

23   examples of nonessential patents that Nero alleges were added for predatory purposes.

24   Nero includes the following patents and the corresponding parenthetical descriptions in

25   the FAC: U.S. Patent Nos. 5,420,866 (encryption, transmission of multiple program

26   streams, and remote tower transmission and the like); 4,833,543 (hardware-implemented

27

28   confirms it has not given any serious thought to attempting to directly license individual
     patents.

1   MPEG-2); 4,849,812 (same); 5,457,701 (remote tower transmission and the like);

2   5,461,420 (telecine processing schemes); 5,453,790 (digital playback in real time).  FAC

3   ¶ 40.  Nero alleges:

4          Those patents and others are not infringed by the products offered by Nero

5          and other similarly-situated (MPEG-2-compliant) companies, and, as a

6          result, these patents are not essential to complying with the MPEG-2

7          standard.  On information and belief, such nonessential patents were added

8          to the MPEG-2 pool only to extend the ultimate expiration date of the pool

9          and/or to make individual licensing impracticable.

10   *Id.*  However, none of these six patents support Nero's allegations of predatory conduct.

11          Three of these allegedly nonessential patents are part of the initial 27 patents

12   submitted to the Department of Justice ("DOJ") in connection with its request for a

13   Business Review Letter approving the MPEG-2 pool and, thus, were not added later to

14   improperly extend the temporal scope of the pool.  *See* Steinberg Decl., Ex. K[4] (listing

15   U.S. Patent Nos. 4,849,812; 5,420,866; and 5,457,701 as "MPEG-2 patents to be

16   included in the patent pool.").  The other three patents also could not have been added to

17   extend the temporal scope of the pool.  The '543 patent expired in 2006.  The '420 patent

18   and the '790 patent expire in 2013.  *See* Motion at 17 n.8.  Because at least two patents in

19   the original pool will not expire until 2014[5], it is impossible that the '420, '543 or '790

20

21

---

22   [4] Under the doctrine of incorporation by reference, the Court can consider the list of 27
     original U.S. patents in the MPEG-2 Pool because Nero references those patents and
23   MPEG LA's representations to DOJ about the original pool throughout the FAC.  *See*
     FAC ¶¶ 8-9, 11, 26, 30-33, 37, 40-42.  Nero has made MPEG LA's submission to DOJ
24   integral to its claim by relying on it for its inference that MPEG LA misled DOJ and has
     added hundreds of nonessential patents to the MPEG-2 Pool.  Moreover, Nero has
25   attached the DOJ Business Review Letter as Exhibit 1 to the FAC.  *See Coto Settlement*
26   *v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).
     [5] U.S. Patent Nos. 5,420,866 and 5,457,701 were filed in 1994 and will not expire until at
27   least 2014.  *See* 35 U.S.C. § 154(a)(2), (c)(1).  Any patents filed before June 8, 1995 are
28   subject to a term of the greater of: (1) twenty years from the date on which the

1   patents were added to extend the duration of the MPEG-2 pool because the "new" patents

2   expire before the original patents.  Therefore, *none* of the six patents Nero alleges are

3   nonessential could have been added for the anticompetitive purpose of unlawfully

4   extending the temporal scope of the MPEG-2 pool.  In that regard, Nero's allegations of

5   predatory conduct remain entirely implausible.

6       Nero also alleges that MPEG LA added nonessential patents to the MPEG-2 pool

7   to increase the cost to Nero of determining which patents it needs to practice its

8   technology in compliance with the standard.  Nero identifies six nonessential patents but

9   does not include any factual basis or explanation of why the patents are not essential to

10   practice the MPEG-2 standard.  Nero explains only that the patents address "peripheral

11   matters" such as encryption, transmission of multiple program streams, and digital

12   playback.  *See* FAC ¶ 40.

13       Nero contends a patent is not essential if it is possible to practice the MPEG-2

14   standard without infringing it.  In other words, Nero contends an essential patent is a

15   patent which is necessarily infringed in connection with the use or implementation of the

16   MPEG-2 standard.  Therefore, according to Nero's tailored theory of patent essentiality,

17   if Nero does not need to license the patent to manufacture its product in compliance with

18   the MPEG-2 standard, the patent is nonessential.[6]  However, this Court has already ruled,

19   "[i]t is not anticompetitive for a patent pool to include numerous *potentially* blocking

20   patents, patents which may or may not be essential but which are more efficient to license

21   as part of the pool than to risk the expense of future litigation."  *Nero AG*, 2010 WL

22   4366448, at * 5 (citing *U.S. Philips Corp. v. ITC*, 424 F.3d 1179, 1187-90 (Fed. Cir.

23   2005)); *Princo v. ITC*, 563 F.3d 1301, 1310 (Fed. Cir. 2009) (finding a patent is essential

24   if it is reasonable for a manufacturer of standard-compliant products to believe that its

25

26   application for the patent was filed or (2) seventeen years from the grant date.  *Id.*; *Abbott Labs. v. Novopharm Ltd.*, 104 F.3d 1305, 1308 (Fed. Cir. 1997).

27   [6] Even if the Court were to accept Nero's theory of non-essentiality—and it does not

28   because controlling authority dictates otherwise—Nero has not explained why the six patents it has identified are non-essential to *its* practice of the MPEG-2 standard either.

1  product infringed any of the claims in the patent), *vacated on other grounds by Princo v.*

2  *ITC*, 583 F.3d 1380 (Fed. Cir. 2009).  Nero is not entitled to a patent pool customized by

3  MPEG LA to Nero's precise needs; direct licensing can accomplish that aim.

4        **3.  Predatory Conduct: Extension of Contract Term**

5        Nero adds new allegations that MPEG LA has added a contractual bar to

6  independent licensing by introducing a new Extended MPEG-2 License that contains a

7  "five-year lock out" on licensees' right to terminate the agreement.  FAC ¶ 43.  A

8  contractual agreement that contains a fixed term and no cancellation clause is not anti-

9  competitive when entered into freely.  Therefore, to bolster its claim, Nero alleges it

10  "realistically had no choice but to sign the Extended MPEG-2 License."  FAC ¶ 43.

11        Nero has not explained plausibly how it was coerced into entering into the new

12  contract.  Nero explains its lack of choice in two ways.  First, Nero alleges—in a

13  footnote—that the threat of being sued for infringement was a "big stick" which served to

14  force licensees to sign the Extended MPEG-2 License.  *See* FAC ¶ 11(c) n.3.  This

15  "coercion" is implausible because Nero could have avoided infringement litigation by

16  directly licensing the necessary patents or perhaps even by continuing to operate under its

17  previous license.  In any event, Nero cannot possibly contend it is anticompetitive for a

18  patentee to enforce its intellectual property rights.  The Court notes, incidentally, that

19  MPEG LA is an organization that merely administers the pool and is not alleged to own

20  any of the patents in the pool.  *See*, *e.g.*, FAC ¶ 1, 8, 12, 21, 37.  Nero has not plausibly

21  alleged that MPEG LA prevents it and other potential licensees from negotiating

22  individual licenses with any of the patentees.

23        Second, Nero contends because its competitors were renewing their licenses at a

24  lower royalty rate, Nero would have been unable to compete if it delayed its switch to the

25  new agreement by taking time to explore direct licensing.  Nero thus admits it entered

26  into the new contract in December 2009, a full year before its existing license expired,

27  because it wanted to take immediate advantage of the lower rates.  FAC ¶¶ 11(c); 43.

28  Nero cannot plausibly allege it was *coerced* into signing the Extended MPEG-2 License

1    when it had twelve months remaining in the term of its existing license in which it could

2    have attempted to negotiate direct licenses, but instead *chose* to enter into a new

3    agreement because it placed a higher value on an immediate decrease in royalty rates.

4         Nero's chief complaint is that a licensee wanting to individually license the patents

5    necessary to practice its technology has to conduct its own essentiality review of the

6    unexpired patents.  But if there were no patent pool at all, Nero would have to conduct

7    the same inquiry.  The fact that there is an option to license from a patent pool is

8    therefore a benefit to Nero.  *Princo v. ITC*, 563 F.3d at 1310 (recognizing patent pools are

9    desirable because they can generate precompetitive efficiencies in the form of reduced

10   transaction costs).  Nero has not plausibly alleged that it did not have the option to license

11   the patents individually; it has not plausibly alleged that the package licensing is a

12   restraint of trade.  *See*, *e.g.*, *McCullough Tool Co. v. Well Surveys, Inc.*, 343 F.2d 381,

13   409-10 (10th Cir. 1965) (distinguishing patent misuse cases in which licensees were

14   faced with a take all or none choice from the case where "the package license was purely

15   voluntary and a licensee who did not want the whole package could obtain a license on a

16   reasonable basis covering any particular patent he did want.")

17        **4.  Discriminatory Conduct and Secret Side Letters**

18        Nero adds allegations about "discriminatory conduct" and "secret side letters".

19   FAC ¶ 49.  The complaint contains no elaboration to explain the basis for these

20   assertions.

21                        **IV.    CONCLUSION**

22        For the reasons set forth above, the Court **DISMISSES** the case *with prejudice*.

23   The Court will not grant Nero leave to amend because it has been given several

24   opportunities to amend its allegations already.  Nero first brought its allegations in the

25   form of counterclaims and then amended counterclaims in an earlier suit, which

26   eventually was remanded to state court for improper removal.  In that prior suit, Nero

27   also had the benefit of reviewing a motion to dismiss that MPEG LA filed before the case

28   was remanded and before Nero re-filed its claims separately in federal court.  Thus, the

1 | first Complaint in this case represented Nero's third attempt at stating a claim upon which

2 | relief can be granted.

3 |        The Court's prior Order explained that "the chief problem with the Complaint is

4 | that it does not contain any factual allegations to support its inferences" and gave Nero an

5 | opportunity to remedy that defect.  *Nero AG*, 2010 WL 4366448, at *8.  Nero has not

6 | succeeded.  *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("[W]e have held

7 | that a district court does not abuse its discretion in denying a motion to amend where the

8 | movant presents no new facts but only new theories and provides no satisfactory

9 | explanation for his failure to fully develop his contentions originally.")

11 |        **IT IS SO ORDERED.**

13 | DATED:  November 24, 2010

14 |                                                   Hon. Mariana R. Pfaelzer

15 |                                                   United States District Judge